UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEOPOLDO DUARTE-PALACIOS,

Plaintiff,

-against-

D. ROGER PHILLIP, MD,
Employee of Westchester Medical Center,
ZUBAIR ZOHA, MD,
Employee of Westchester Medical Center,

Defendants.

26-CV-2910 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is currently incarcerated in Clinton Correctional Facility, brings this action, *pro se*, under 42 U.S.C. § 1983 and the Emergency Medical Treatment and Labor Act (“EMTALA”), 42 U.S.C. § 1395dd(a). He names as defendants D. Roger Phillip, MD and Zubair Zoha, MD, in their individual capacities. Plaintiff alleges that Defendants are employed at Westchester Medical Center (“WMC”). By order dated May 21, 2026, the court granted Plaintiff’s request to proceed *in forma pauperis* (“IFP”), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner’s IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are drawn from the complaint.[1] On August 20, 2023, Plaintiff was shot by officers from the Poughkeepsie Police Department. (ECF 1, at 2). Plaintiff was taken

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

to the emergency room at Mid-Hudson Regional Hospital, where he "was not given proper screening and adequate treatment for his wound."[2] (*Id.*) On an unspecified date, likely the same day he arrived at the emergency room, Plaintiff was discharged from Mid-Hudson Regional Hospital "with the bullet still lodged next to his heart." (*Id.*)

On September 1, 2023, Defendant Phillip, a doctor at WMC, removed the bullet.[3] (*Id.*) Plaintiff alleges that he "was not given stitches to close the open wound," leading to an infection next to his heart. (*Id.*) For three months following the surgery, Plaintiff experienced chest pains and difficulty breathing, which he "repeatedly complained" about to "jail medical staff."[4] (*Id.*)

On November 9, 2023, Plaintiff was transported from an unspecified jail to the WMC, where Defendant Zoha ordered a CT scan for the purposes of diagnosis and treatment. On December 29, 2023, a CT scan was performed at WMC which revealed "remaining bullet fragments lodged in [P]laintiff's chest close to his heart." (*Id.*) However, Defendant Zoha "refused to remove the fragments that still remain[ed] in [Plaintiff's] chest" at this time. (*Id.*) As a result of Zoha's refusal, Plaintiff has suffered "injuries to [his] arm and chest, in particular movement and strength in his left arm and chest pains and difficulty breathing from fragments left in his chest," for the last two years. (*Id.* at 3.) Plaintiff alleges that these injuries are "ongoing and permanent." (*Id.*) Plaintiff further alleges, without providing supporting facts, that all of the

[2] Plaintiff does not name as defendants any individuals affiliated with Mid-Hudson Regional Hospital.

[3] In his statement of facts, Plaintiff does not allege whether he was in custody, and, if so, whose custody he was in, at the time he was taken to WMC. Elsewhere in the complaint, however, Plaintiff appears to allege that he was in the custody of the Poughkeepsie Police Department each time he was brought to WMC for treatment. (*See id.* at 11.)

[4] It is unclear from the complaint which jail Plaintiff was held in at the time, and he does not name any jail employees as defendants.

doctors who treated him "conducted their screening procedures, treatment, and discharge of the plaintiff at the direction of the police." (*Id.* at 6.)

Plaintiff seeks money damages and for the court to "declare that Plaintiff/inmates have an Eight[h] Amendment right to be free from medical malpractice, to be properly screened and stabilized before being discharged." (*Id.* at 12.)

**DISCUSSION**

**A. Federal constitutional claims**

The Court understands Plaintiff's allegations as attempting to assert claims, under Section 1983, that he was denied constitutionally adequate medical care. Since Plaintiff appears to allege that he was in the custody of a county or local jail at the time the events occurred,[5] the Court assumes for the purposes of this order that he was a pretrial detainee, and his claims are therefore analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29, 33 n.9 (2d Cir. 2017). To state a claim under Section 1983 for constitutionally inadequate medical care under the Fourteenth Amendment, a plaintiff must satisfy two elements: (1) an "objective" element, establishing that the challenged conditions are sufficiently serious, and (2) a "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

To satisfy the objective element, a plaintiff must allege "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which

[5] According to public records maintained by the New York State Department of Corrections and Community Supervision, Plaintiff was received into the custody of Clinton Correctional Facility on August 19, 2024, several months after the events giving rise to his claims. Incarcerated Lookup, N.Y. State Dep't of Corr. and Cmty. Supervision, https://nysdoccslookup.doccs.ny.gov/ (last visited June 9, 2026).

"includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). To satisfy the second element—the "subjective" or "mental" element—a pretrial detainee must allege facts indicating "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Under this standard, a challenge based on the inadvertent or negligent failure to provide adequate care does not raise a constitutional claim under the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Furthermore, a "mere disagreement over the proper treatment" does not rise to the level of a constitutional claim for deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (holding that a "mere disagreement over the proper treatment" is not actionable under Section 1983).

Here, Plaintiff brings his claims against two doctors employed by the WMC. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. WMC is owned and maintained by the Westchester County Health Care Corporation ("WCHCC"), a public benefit corporation created pursuant to New York Public Authorities Law § 3303. *See* N.Y. Pub. Auth. Law §§ 3301 & 3303. WCHCC is a suable entity, *see* N.Y. Pub. Auth. Law § 3305(1) (noting that WCHCC shall have the power "to sue and be sued"), and its employees are state actors for purposes of Section 1983 liability, *see Festa v. Westchester Medical Center Health Network*, 380

F. Supp. 3d 308, 322 (S.D.N.Y. 2019); *Mejia v. New York City Health & Hosps. Corp.*, No. 16-CV-9706 (LJL), 2018 WL 3442977, at *5 (S.D.N.Y. July 17, 2018) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Therefore, as employees of WMC and WCHCC, Defendants Phillip and Zoha are state actors within the meaning of Section 1983.

Because Plaintiff alleges that he was shot and suffers from “ongoing and permanent” injuries, the Court assumes, for purposes of this order, that Plaintiff has satisfied the objective element of the deliberate indifference standard. Plaintiff’s allegations, however, do not suggest that Phillip or Zoha acted with the required subjective intent. With respect to Phillip, Plaintiff alleges that Phillip did not adequately close the wound after removing the lodged bullet. He does not allege facts suggesting that Phillip intentionally imposed, or recklessly failed to mitigate, a serious medical condition. With respect to Zoha, Plaintiff alleges only that Zoha “refused” to remove bullet fragments that were lodged close to Plaintiff’s heart. Without additional factual support, the Court is unable to infer that Zoha’s actions were the result of deliberate indifference rather than a valid medical decision based, for example, on the location of the bullet fragments.

Finally, although Plaintiff asserts that the decisions of all doctors who provided him treatment were at the “direction” of the police, this conclusory assertion, without supporting facts, is insufficient to suggest that the Defendants abandoned their medical judgment and were instead acting at the direction of police officers. *Cf. Nielsen v. Rabin* 746 F.3d 58, 63-64 (2d Cir. 2014) (holding that a doctor’s failure to treat an arrestee’s injuries when acting at the direction of police officers, rather than on the basis of a medical assessment, can sufficiently establish the mental state element of a deliberate indifference claim). Plaintiff therefore fails to state a viable Section 1983 claim for inadequate medical care against Defendants.

The Court grants Plaintiff leave to file an amended complaint alleging facts sufficient to state a viable Section 1983 claim against Defendants.

**B. Claims under EMTALA**

EMTALA requires that a hospital's emergency department "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition" exists. 42 U.S.C. § 1395dd(a).[6] If the screening reveals an emergency medical condition, the hospital is required to "stabilize the medical condition." § 1395dd(b)(1)(A). Under the statute, an "emergency medical condition" is one that shows

> acute symptoms of sufficient severity . . . such that the absence of immediate medical attention could reasonably be expected to result in[:] (i) placing the health of the individual . . . in serious jeopardy, or (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part.

§ 1395dd(e)(1)(A). To "stabilize" an emergency medical condition means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." § 1395dd(e)(3). EMTALA applies to hospitals that

---

[6] With respect to screening, EMTALA states,

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).

participate in the federal Medicare program. *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999).

To state a claim under EMTALA, a plaintiff "must allege that he (1) went to the Defendant's emergency room (2) suffering from an emergency medical condition, and that the Hospital either (3) failed to adequately screen him to determine whether he had such a condition, or (4) discharged or transferred him before the emergency condition was stabilized." *Eads v. Milford Hosp.*, No. 3:10-CV-1153, 2011 WL 873313, at *2 (D. Conn. Feb. 23, 2011) (citing *Hardy*, 164 F.3d at 792); *see Anghel v. Saint Francis Hosp. & Med. Ctr.*, No. 3:03-CV-0864, 2007 WL 9719256, at *3 (D. Conn. Sept. 26, 2007) ("A hospital, through the operation of its emergency room, can violate § 1395dd either (1) by failing to detect the nature of the emergency condition, through inadequate screening procedures under [Section 1395dd(a)] or (2) under [Section 1395dd(b)], if the emergency nature of the patient's condition is detected, by failing to stabilize the condition before releasing the plaintiff"), *report and recommendation adopted*, 2007 WL 9719257 (D. Conn. Oct. 22, 2007); *Brenord v. Cath. Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 185 (E.D.N.Y. 2001) ("[T]o state a claim under EMTALA, a plaintiff must allege that she went to the emergency room of a participating hospital seeking treatment for a medical condition, and that the hospital either did not screen her in the same way it screened other patients to determine whether she had an emergency medical condition, or discharged or transferred her before such a condition had been stabilized.").

EMTALA was "'not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence.' . . . Instead, EMTALA was enacted to fill a lacuna in traditional state tort law by imposing on hospitals a legal duty . . . to provide emergency care to all." *Hardy*, 164 F.3d at 792-93 (quoting *Power v. Arlington Hosp. Ass'n*, 42

F.3d 851, 856 (4th Cir. 1994)); *see Bryan v. Rectors and Visitors of the Univ. of Virginia,* 95 F.3d 349, 351 (4th Cir. 1996) ("[EMTALA's] core purpose is to get patients into the system who might otherwise go untreated and be left without a remedy because traditional medical malpractice law affords no claim for failure to treat."); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C. Cir. 1991) (explaining that EMTALA creates "a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat").

An EMTALA claim should be brought against a hospital, instead of the hospital's individual physicians. *See Hardy*, 164 F.3d at 793 ("EMTALA provides that a plaintiff, in a civil action *against a hospital*, may 'obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.'" (quoting § 1395dd(d)(2)(A) (emphasis added)); *Fisher by Fisher v. N.Y.C. Health & Hosp. Corp.*, 989 F. Supp. 444, 448 (E.D.N.Y. 1998) (explaining that "Congress obviously considered enforcement mechanisms against participating hospitals and physicians, and chose to provide a private right of action against only hospitals" and that "[m]ost courts that have addressed the issue have found that EMTALA does not create a private cause of action against individual physicians" and collecting cases).

Here, Plaintiff brings an EMTALA claim against two physicians in their individual capacities, but not against WMC. Even if Plaintiff had named the WMC, he would fail to state a claim under EMTALA for three reasons. First, Plaintiff does not allege that he was treated in WMC's emergency department.[7] He instead states that he was seen by Defendant Phillip, weeks after being shot, to have the bullet removed, and Defendant Zoha to be further diagnosed and

---

[7] The Court assumes, for the purposes of this order, that WMC participates in the federal Medicare program.

treated using a CT scan. Plaintiff alleges no facts suggesting that, on either occasion, he was treated in WMC's emergency room.

Second, even if Plaintiff did go to the emergency room at WMC, he does not allege facts suggesting that medical center staff failed to adequately screen him or discharged him before his emergency condition was stabilized. Plaintiff alleges that, in each instance, he was seen by a doctor who provided him with some degree of treatment. He does not allege any facts suggesting that the doctors failed to screen him or screened him in a way that was different than how they would screen any other patient. *See, e.g.*, *Neeseman v. Mt. Sinai West*, No. 17-CV-1766 (LGS), 2018 WL 626358, at *4 (S.D.N.Y. 2018) (stating that a complaint will fail to state an EMTALA claim if "it does not allege that [Plaintiff] was denied emergency care."); *Brenord*, 133 F. Supp. 2d at 185 ("Faulty screening in a particular case, as opposed to disparate screening or refusing to screen at all, does not violate the statute.").

Third, Plaintiff does not allege any facts suggesting that he was discharged before any emergency condition was "stabilized." The crux of Plaintiff's claim is that doctors at WMC did not remove all bullet fragments and inadequately stitched his wound, and later refused to remove bullet fragments in proximity to Plaintiff's heart. These allegations suggest, at most, a claim that the individual doctors were negligent. EMTALA, however, was "not intended . . . to provide a federal remedy for . . . medical negligence." *Hardy*, 164 F.3d at 792-93 (internal quotation and citation omitted); *see Anghel*, 2007 WL 9719256, at *4 (finding plaintiff's allegations that hospital "fail[ed] to offer [him] suitable care" failed to state an EMTALA claim). Plaintiff therefore fails to state a claim under EMTALA.

The Court grants Plaintiff leave to replead his EMTALA claims in an amended complaint that names the WMC as a defendant, and pleads facts addressing the deficiencies identified above, including facts showing that he went to the emergency room at WMC.

The Court notes that, while Plaintiff does not allege that he went to the emergency room at WMC, he does state that he went to the emergency room at Mid-Hudson Regional Hospital, which he did not name as a defendant. If Plaintiff wishes to bring an EMTALA claim against the Mid-Hudson Regional Hospital, he may do so in the amended complaint by naming Mid-Hudson Regional Hospital as a defendant and alleging non-conclusory facts satisfying the standards set forth above.

The Court also notes that Plaintiff's EMTALA claims appear to be untimely. EMTALA states that "[n]o actions may be brought . . . more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(c). Plaintiff filed the complaint commencing this action on April 7, 2026. Therefore any claims arising from violations occurring before April 7, 2024—which would appear to include all of Plaintiff's hospital visits described in the complaint—appear time-barred. If Plaintiff repleads his EMTALA claims in an amended complaint, he should allege facts demonstrating that his claims are timely or that equitable tolling should apply.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid Section 1983 claims for inadequate medical care and/or claims against WMC under EMTALA, the Court grants Plaintiff 60 days' leave to amend his complaint to address the deficiencies identified above.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

**CONCLUSION**

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 26-CV-2910 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss Plaintiff's federal claims for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii), and decline to exercise supplemental jurisdiction of any state law claims he may be asserting, *see* 28 U.S.C. § 1367(c)(3).

SO ORDERED.

Dated: October 29, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

______________________________________________
______________________________________________
______________________________________________

*(In the space above enter the full name(s) of the plaintiff(s).)*

**____ Civ. ________ ( ____ )**

**AMENDED COMPLAINT**

**-against-**

______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________
______________________________________________

Jury Trial: ☐ Yes ☐ No
(check one)

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I. Parties in this complaint:**

A. List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff Name ________________________________________________
Street Address ________________________________________________
County, City ________________________________________________
State & Zip Code ________________________________________________
Telephone Number ________________________________________________

B. List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1
Name ____________________________________________
Street Address ____________________________________________
County, City ____________________________________________
State & Zip Code ____________________________________________
Telephone Number ____________________________________________

Defendant No. 2
Name ____________________________________________
Street Address ____________________________________________
County, City ____________________________________________
State & Zip Code ____________________________________________
Telephone Number ____________________________________________

Defendant No. 3
Name ____________________________________________
Street Address ____________________________________________
County, City ____________________________________________
State & Zip Code ____________________________________________
Telephone Number ____________________________________________

Defendant No. 4
Name ____________________________________________
Street Address ____________________________________________
County, City ____________________________________________
State & Zip Code ____________________________________________
Telephone Number ____________________________________________

## II. Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A. What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal Questions ☐ Diversity of Citizenship

B. If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? ____________________________________________

____________________________________________

____________________________________________

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship ____________________________________________
Defendant(s) state(s) of citizenship ____________________________________________

____________________________________________

## III. Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? ________________________________

______________________________________________________________________________

B. What date and approximate time did the events giving rise to your claim(s) occur? ___________

______________________________________________________________________________

______________________________________________________________________________

C. Facts: ______________________________________________________________________

What happened to you?

Who did what?

Was anyone else involved?

Who else saw what happened?

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

## IV. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. ______________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

**V. Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. ______________________________________

________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________
________________________________________________________________________________

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _______________, 20___.

Signature of Plaintiff _______________________________________

Mailing Address _______________________________________

_______________________________________

_______________________________________

Telephone Number _______________________________________

Fax Number *(if you have one)* _________________________________

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _________________, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _______________________________________

Inmate Number _______________________________________